# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

VIGILANT INSURANCE COMPANY, *et al.*,

    Plaintiffs,

v.

LINCOLN GENERAL INSURANCE COMPANY, *et al.*,

    Defendants.

Case No. 2:06-cv-1607-LDG (LRL)

**ORDER**

    On April 17, 2003, Barry Root was driving a rental car when he rear-ended another vehicle. He was, at the time, covered by three separate insurance policies: an automobile policy issued by Government Employees Insurance Company (GEICO), an excess liability policy issued by Vigilant Insurance Company (Vigilant), and a supplemental liability policy issued by Lincoln General Insurance Company (Lincoln) that Root purchased through the rental car agency, DTG Operations, Inc (DTG). In addition, DTG either maintained insurance or self-insured the use of the rental car for the statutory minimum for tort liabilities.

    Root was sued by the driver of the vehicle that he struck. The three insurers and the rental car agency settled, and each contributed to the settlement of, that litigation. The

insurers, however, reserved the issue as to the priority of the policies.  GEICO and Vigilant then brought this suit seeking a determination that Lincoln or DTG (or both) were obligated to pay the entire settlement, and are now obligated to reimburse them for their respective contributions to the settlement.  All parties have sought summary judgment.  Having considered the arguments and pleadings, the Court will grant summary judgment in favor of GEICO and Vigilant against Lincoln, and in favor of DTG against GEICO and Vigilant.

Jurisdiction

The Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. §1332, as all parties are diverse and the amount in controversy exceeds $75,000.

Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim.  *Anderson,* 477 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Analysis

**Priority of Coverage for the Tort Liability in the Underlying Lawsuit**.

At issue is the determination of the priority in which the various applicable insurance policies were to be applied to cover the tort liability in the underlying lawsuit.

The court first considers the priority of the insurance maintained by DTG on the rental car.  As the owner of the rental car, DTG was required to maintain insurance in the amount of $15,000 for payment of tort liabilities (for bodily injuries) arising from the use of the car.  *See*, Nev. Rev. Stat. §485.185.  DTG could fulfill this obligation by either obtaining an insurance policy or by self-insurance.  *See*, Nev. Rev. Stat. §485.034.  The record indicates that DTG fulfilled its obligation as a self-insurer.  That is, DTG self-insured the

rental car in the amount of $15,000.  Neither DTG nor Lincoln have offered any evidence or argument that, under the circumstances of the underlying event, the priority of DTG's self-insurance of the rental car was other than primary relative to the insurance policies issued by GEICO, Vigilant, and Lincoln.

Next, the court considers the priority of Lincoln's insurance policy.  Critical to this issue is Section 2.b, which provides that:

> [l]iability under this policy shall not attach until the limit of liability or limit of insurance of all applicable "underlying insurance" has been exhausted by payment of judgments or settlements and the "insured" has become legally obligated to pay the "ultimate net loss" in excess of the limit of liability or limit of insurance of such "underlying insurance."

The term "underlying insurance" is defined as the "insurance listed in ITEM 4., Schedule of Underlying Insurance of the Declarations."  ITEM 4, in turn, lists: "Limits required under any State Financial Responsibility Limits or Mandatory Insurance Law or other available insurance, which ever is higher."  Section 2.I further provides that "[u]nderlying insurance" shall be maintained in full effect by you during the term of the policy.  This requirement is a condition precedent to coverage" (underline added).  The word "you," as defined in the policy, "refer[s] to the Policyholder(s) shown in the Declarations."  DTG is the Policyholder shown in the Declarations.  Thus, within the policy, "underlying insurance" means the insurance maintained by DTG; that is, the $15,000 liability limit required under Nevada's mandatory insurance law.  Accordingly, pursuant to this term, Lincoln's liability attached when DTG paid $15,000 into the settlement, exhausting its $15,000 insurance liability mandated by state law.  As characterized by Lincoln, the Lincoln policy was a "true" excess policy relative to the DTG policy.  That is, DTG's maintenance of the underlying insurance, to which the Lincoln policy was excess, was a condition precedent to coverage.  This clause within the Lincoln policy does not establish the priority of Lincoln's coverage relative to any insurance other than the underlying insurance identified in the policy; that is, the coverage provided by DTG pursuant to state law.

4

As to the priority of the Lincoln policy relative to other insurance policies (that is, other than the underlying insurance DTG was required to maintain) Section 2.j provides insight. That section provides, in relevant part:

> Except for such other insurance that is purchased specifically to be excess of our limits of insurance, the insurance provided by this policy is excess over any other collectible insurance and its deductible or self-insured retention available to the "insured".

As characterized by Lincoln, this "other insurance" clause establishes that the Lincoln policy is, at most, "fortuitously" excess to other insurance policies under certain, generally identified circumstances. The availability of other insurance whose coverage would be primary relative to Lincoln's policy under this clause would be fortuitous as to Lincoln. Such "other insurance" would relieve Lincoln of its existing obligation to cover the loss due solely to circumstances fortuitous to Lincoln; that is, circumstances beyond the control of either Lincoln or its policyholder, DTG.

Lincoln argues that the "mere $9.95 per day" charged by DTG to renters for Lincoln's supplemental insurance represents a "reduced premium" that is evidence of a "true" excess policy because the insurer becomes obligated to pay only after a certain amount has already been paid under primary coverage. Neither Lincoln nor DTG, however, have offered any evidence that the premium charged to a renter for Lincoln's supplemental insurance was "reduced" to reflect other insurance (ie, other than the underlying insurance, yet still primary relative to Lincoln's policy) that might or might not be available to the renter. Rather, the evidence indicates that Lincoln's policy was "fortuitously" excess to other policies generally. The "other insurance" clause did not identify any circumstance in which Lincoln's policy would be excess to another policy. Rather, the clause addresses only the priority of the Lincoln policy if "other insurance" was available to the insured, when the terms of such insurance did not establish it as excess to the Lincoln policy.

The court next considers the priority of the GEICO policy. None of the parties dispute that the GEICO policy generally provided primary coverage to Root. Neither do any of the parties dispute that the GEICO policy included an "other insurance" clause, which provided in relevant part:

> Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle you do not own shall be excess over any other valid and collectible insurance.

None of the parties suggests that the GEICO policy was primary relative to the coverage provided by DTG. Rather, the issue before the court is whether the GEICO coverage was primary, secondary, or coincident to the coverage provided by Lincoln. Lincoln argues that its policy is secondary to the GEICO policy because the GEICO policy is a "primary" policy that is "fortuitous" excess to other policies, while the Lincoln policy is a "true" excess policy. Lincoln's argument is erroneous for two, critical reasons. First, the Lincoln policy is a "true" excess policy relative to the DTG coverage and a "fortuitous" excess policy relative to other policies. Second, the GEICO "other insurance" clause expressly provides that the GEICO coverage is excess to other policies when the loss concerns a vehicle that the insured does not own. As revealed by a review of the policies in this action and state statutes, the enactment of mandatory vehicle insurance laws indicates that an insured has a reasonable expectation that a vehicle he does not own will, nevertheless, be insured. As the GEICO insurance policy is bought as primary insurance for a specific, identified vehicle, the policy's "other insurance" clause further indicates an insured's reasonable expectation that the insurance covering the "non-owned" vehicle will provide primary coverage on that vehicle relative to the GEICO policy.

DTG's brochure for rental customers describing Lincoln's policy reflects this reasonable expectation. That brochure states:

> When [Lincoln's insurance policy] is accepted, the combination of the rental agreement limits and any other indemnity agreements and [Lincoln's insurance] policy limits provide an aggregate of up to $1,000,000 CSL liability

>    protection.  The protection provided under the rental agreement and [Lincoln's insurance] policy would <u>have to be exhausted before any</u> coverage by the Renter's own policies would be affected.

Similarly, the Rental Agreement between DTG and Root provided:

>    2.   Where available, and for an additional daily charge, if You [Root] initialed that You accept the optional [Lincoln insurance policy] at the beginning of the rental, [Lincoln's insurance policy] provides You with protection against third-party auto liability claims as outlined below:
>    . . .
>    B.   [Lincoln's insurance policy] provides You with a separate policy providing excess coverage against such claims for the difference between the Primary Protection [provided by DTG's coverage] and a maximum combined single limit of $1,000,000 (U.S.) per occurrence for bodily injury, including death and property damage, for other than the Vehicle while the Vehicle is on rent to You.

The parties do not dispute that Root initialed and paid for the Lincoln policy at the time he rented the car from DTG.  The language of the brochure and the Rental Agreement establishes that, by purchasing the supplemental liability insurance that included Lincoln's policy, DTG would provide primary coverage of losses and that Lincoln would the provide secondary coverage before a renter would be required to make a claim against his own policy or policies.

      In sum, the Lincoln policy expressly provides that its coverage attaches upon the exhaustion of the DTG coverage.  Lincoln obtains relief from that obligation, if at all, only pursuant to its "other insurance" clause.  That clause reflects a non-specific intent to be secondary to other insurance policies that might or might not possibly exist.  By contrast, the GEICO policy provides that its coverage for losses from use of a non-owned vehicle is secondary to all "other insurance," which would include insurance reasonably expected to be maintained by the owner of the vehicle.  That this priority of coverage–DTG, then Lincoln, then GEICO–is the reasonably expected order of priority is supported by DTG's own brochure and Rental Agreement, which includes language reflecting this same priority.

      The determination of the priority as between DTG, Lincoln, and GEICO effectively moots any need to determine the priority of Vigilant.  The litigation against Root was settled

for $760,000. DTG's coverage paid the first $15,000 of this settlement, leaving an excess amount of $745,000. This amount did not exhaust the limits of Lincoln's policy, which were $985,000.00 (that is, the difference between $1,000,000 and DTG's coverage), and which was required to be applied to the loss prior to any contribution from GEICO. Nevertheless, as the terms of the Vigilant policy establish that it is a "true" excess policy relative to coverage provided by GEICO, Vigilant's liability did not attach until the limits of the GEICO policy were exhausted. As the limits of the GEICO policy were not exhausted, Vigilant's liability did not attach. Accordingly, summary judgment is appropriate in favor of GEICO and Vigilant as against Lincoln.

In seeking summary judgment, Vigilant (joined by GEICO) also sought a determination that the terms of the Rental Agreement and DTG's brochure created an obligation, in equity, that DTG indemnify or contribute to the underlying loss in an amount up to $1,000,000. As the court has found that Lincoln's policy was secondary as to DTG's coverage, but primary relative to GEICO's coverage, thus indicating that DTG met its obligations, the court will not entertain any argument in equity founded upon the premise that DTG failed to meets its obligation. Accordingly, summary judgment is appropriate in favor of DTG on each of the plaintiffs' claims.

Therefore, for good cause shown,

THE COURT **ORDERS** that Vigilant Insurance Company's Motion for Summary Judgment, joined by Government Employees Insurance Company (## 22, 26, 28) is GRANTED as to the claims brought against Lincoln General Insurance Company, and is DENIED as to the claims brought against DTG Operations, Inc.

THE COURT FURTHER **ORDERS** that Lincoln General Insurance Company's Motion for Summary Judgment (#24) is DENIED;

THE COURT FURTHER **ORDERS** that DTG Operations, Inc.'s Motion for Summary Judgment (#23) is GRANTED;

1 | THE COURT FURTHER **ORDERS** that Vigilant Insurance Company's Motion for
2 | Status of the Matter (#39) is DENIED as moot.
3 |
4 | DATED this __22__ day of August, 2008.
5 |
6 |                                                           Lloyd D. George
7 |                                                           United States District Judge